# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

HARBOUR COVE MARINE
SERVICES, INC.,

        Plaintiff/Counterclaim Defendant,

        v.                                 Civil No. 02-1695 (RBK)

ELLIS RABINOWITZ, et al.,

        Defendants/Counterclaim Plaintiffs.

## OPINION

**KUGLER**, United States District Judge:

        Currently before the Court are two motions for reconsideration of this Court's Opinion of July 8, 2005. The Court will deny both motions. Because the Court writes for the benefit of only the parties, it will assume the parties are sufficiently familiar with the background of this case so that reciting the facts is unnecessary. First, the Court will address the motion filed by Defendants Edward Grogan and David Rain. The Court will then address the motion filed by Plaintiff Harbour Cove Marine Services ("HCMS").

## I. STANDARD OF REVIEW

        Motions for reconsideration are governed by Local Civil Rule 7.1(i) and must set "forth concisely the matters or controlling decisions which the party believes the Judge . . . has overlooked." L. Civ. R. 7.1(i). Local Rule 7.1(i) does not present an

opportunity to present new arguments, rehash old arguments, or file dissent with the Court's ruling.

## II. RAIN AND GROGAN

Rain and Grogan complain that the Court should not have enforced the Winter Storage Agreement ("WSA") solely by its terms. Rather, they argue, the Court should have considered the testimony of Mike Perry, the so-called drafter of the WSA. More specifically, they contend that the Court overlooked their argument that because the WSA did not have an integration clause, it was appropriate to consider extrinsic evidence regarding the parties' intent.

It appears Rain and Grogan misunderstand the power of an integration clause and the appropriate use of any evidence other than the terms of the contract. Whether a contract is fully integrated is relevant to whether the parol evidence rule applies. The parol evidence rule "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing." Richard A. Lord, Williston on Contracts, § 33 (4th ed. 1999). Rain and Grogan have not attempted to use evidence of prior or contemporaneous agreements. Rather, they insist the WSA should be open to interpretation and that the Court should therefore consider Mike Perry's testimony.

2

An integration clause in the WSA, as in any other contract, would likely state that there are no other agreements between the parties and that all prior agreements are integrated into the present agreement (the WSA). How, then, does the absence of such a clause permit the Court to consider evidence regarding Mike Perry's interpretation of the WSA? His testimony does not reveal the existence of other agreements or a separate promise between the parties regarding exculpation. Instead, he simply interprets the WSA exactly contrary to its plain meaning, as determined by the Court. In the presence of unambiguous terms, such testimony is unhelpful.

The presence of an integration clause has no bearing on whether evidence is needed to interpret a contract. To be sure, an integration clause will not bar evidence of prior agreements needed to interpret ambiguous terms. See Martin v. Monumental Life Ins. Co., 240 F.3d 223, 233 (3d Cir. 2001) ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible, however, to establish the meaning of ambiguous terms in the writing, whether or not the writing is integrated."). When the terms of the contract are clear and unambiguous, the Court is without power to do anything but enforce those terms. Id. ("When a written contract is clear and unequivocal, its meaning must be determined by its contents alone."); see Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) ("[C]ourts must eschew the ideal of ascertaining the parties' subjective intent and instead bind parties by the objective manifestations of their intent. As Justice Holmes observed: 'The making of

3

a contract depends not on the agreement of two minds, in one intention, but on the agreement of two sets of external signs not on the parties' having meant the same thing but on their having said the same thing.'") (citation omitted). Thus it is ambiguity, or a lack of ambiguity, that governs whether resort to evidence of the parties' intent is appropriate. An integration clause, no matter how well-crafted, cannot change whether words in a contract are ambiguous and thus subject to varied interpretations.

The Court agrees that integration clauses were not addressed, as such, in the Court's Opinion. But as demonstrated above, whether the WSA was integrated had nothing to do with the issues before the Court.

## III. HCMS

In its motion, HCMS takes issue with the Court's refusal to enter summary judgment against Standard Fire, as subrogee of Ellis Rabinowitz. The Court must have, says HCMS, overlooked the argument contained in its reply brief that the Winterization Agreement did not apply to this case and that Mike Perry, when he set fire to the *Forget-Me-Knot*, was performing under the WSA.

HCMS's reply brief does not establish its entitlement to summary judgment. In its reply brief, HCMS merely called the agreement to winterize Rabinowitz's boat a "red herring." Without citing to evidence in the record, HCMS also advanced its conclusion that "Perry attempted to repair the loose flap as part of his normal inspection

4

and maintenance procedure, not pursuant to the invoice for winterization."

This is not enough to establish HCMS's right to judgment. Shrinkwrapping boats is not contemplated by the WSA. It is addressed, however, by the winterization invoice. Or, the work performed to prepare the *Forget-Me-Knot* for winter is reflected on that invoice. HCMS never established a reason that this Court should dismiss the possibility that Perry was acting pursuant to a separate agreement to winterize the *Forget-Me-Knot*. It is unclear from the record before the Court which agreement controlled. If Perry was replacing shrinkwrap that he had applied to the *Forget-Me-Knot* pursuant to the winterization agreement, then it is more than plausible that he was acting pursuant to that agreement. Further, it is unclear how the fact that Perry was performing his routine inspections of the boats leads to the conclusion that only the WSA could apply; especially when Perry was repairing work that he had performed under a separate agreement.[1] The Court cannot grant summary judgment without HCMS first establishing the source of its

---

[1] The Court will not address HCMS's argument that the terms of the winterization invoice also absolve it of liability. Doing so would flout the purpose of a declaratory judgment, which is to give effect to clear, established rights so that parties can proceed with certainty.. HCMS has not presented enough information on which the Court can declare its rights as against Rabinowitz, and thus Standard Fire, under any agreement. For the Court to assess the parties' rights under a contract that may or may not apply would be advisory in nature and thus improper. See Armstrong World Industries, Inc. by Wolfson v. Adams, 961 F.2d 405, 412 (3d Cir. 1992) ("In addition to having adversity of interest between the parties, any contest must be based on a 'real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. A declaratory judgment granted in the absence of a concrete set of facts would itself be a 'contingency,' and applying it to actual controversies which subsequently arise would be an 'exercise in futility.'") (citations and quotation marks omitted).

5

right to a declaratory judgment. HCMS's motion will, therefore, be denied.

Additionally, the Court will not address HCMS's other argument–that there is no evidence to support a finding of gross negligence. That issue was addressed by the Court in its original Opinion.

## IV. CONCLUSION

For the reasons stated above, the Court will deny the motion for reconsideration filed by Rain and Grogan and the motion for reconsideration filed by HCMS.

Dated: 8/29/05

ROBERT B. KUGLER
United States District Judge

6